## ECCLES et al. v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Division One, June 18, 1902.*

**Appellate Jurisdiction:** INTERSTATE COMMERCE. In a suit by a shipper against a common carrier for damages to goods in transit, no construction of the Federal or State Constitution is so involved as to give the Supreme Court jurisdiction of the appeal by an assignment of error in the motion for a new trial and in the brief that the judgment is in conflict with the Interstate Commerce Act, unless it is stated in what particular it is in conflict therewith.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris*, Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*NOTE:—Decided May 21, 1902. Rehearing denied June 18, 1902. The opinion in this cause was not certified to the reporter by the clerk until January 5, 1903, and, hence, its appearance out of its chronological order.

*Martin L. Clardy* and *Henry G. Herbel* for appellant.

(1)   The court erred in refusing the instructions offered by defendant.   Nines v. Railroad, 107 Mo. 457; Dimmitt v. Railroad, 103 Mo. 433; Miller Grain Co. v. Railroad, 138 Mo. 668; Railroad v. Crossman, 33 S. W. 290; Bennett v. Railroad, 46 Mo. App. 668; Patterson v. Railroad, 56 Mo. App. 660; Minter Bros. v. Railroad, 56 Mo. App. 287; Harris v. Howe, 12 S. W. 225; Nebraska Milling Co. v. Railroad, 41 S. W. 810.   (2) · As the trial court decided this case according to the statute law of Missouri, its ruling is in conflict with the Interstate Commerce Act, as well as with the Constitution of this State and of the United States.   Miller · Grain, Etc. Co. v. Railroad, 138 Mo. 668; U. S. v. Trans-Missouri Assn., 166 U. S. 290; U. S. v. Joint Traffic Assn., 171 U. S. 505; Stanley v. Railroad, 100 Mo. 435; Grimes v. Eddy, 126 Mo. 168; Selvege v. Railroad, 135 Mo. 163; Railroad v. Ill., 118 U. S. 557; Ward v. Railroad, 158 Mo. 226; Gerber v. Railroad, 63 Mo. App. 147; Holten v. Railroad, 61 Mo. App. 204; Railroad v. Clements, 49 S. W. 913; Wyrick v. Railroad, 74 Mo. App. 406.

*G. H. TenBroek, L. C. Spooner* and *J. M. Holmes* for respondents.

(1)   The contract sued on was a through contract from South Omaha to Los Angeles, and hence the attempt to limit the liability was void.   McCann v. Eddy, 133 Mo. 69; Germain Fruit Co. v. Railroad, 65 Pac. 948; Davis v. Jacksonville Line, 126 Mo. 80; Hutchinson on Carriers, secs. 145, 273.   (2)   The defendant is liable under the evidence whether the contract be a through one, or a forwarding one, from Pueblo west, as it was guilty of gross negligence as a forwarder, as well as in its capacity of carrier.   Hutchinson on Carriers, secs. 310, 311, 314, 316, 280b, 145; Goodrich v. Thompson, 44 N. Y. 344; Goddard v. Mallory, 52 Barb. 87;

Vol 170 mo—28.

Chandler Commission Co. v. Railroad, 64 Mo. App. 144; Railroad v. Boggs, 40 S. W. 21; Railroad v. Alison, 59 Tex. 193; Thompson on Carriers, sec. 431; Schouler on Bailments and Carriers, secs. 590-594, 600-615; Dimmitt v. Railroad, 103 Mo. 443.

ROBINSON, J.—This is a suit to recover the value of a car load of partly cured meat, known in the market as ''sweet pickled bellies,'' that was permitted to spoil during transportation. Plaintiffs' action is predicated upon the following shipping contract or bill of lading issued by the defendant railroad company to Swift & Company, of South Omaha:

[ORIGINAL.]

Form 1132.

THE MISSOURI PACIFIC RAILWAY.

South Omaha, Neb., Nov. 14, 1890.

Received from Swift & Company, the following packages, contents unknown, in apparent good order, marked and numbered as per margin, to be transported from South Omaha to Los Angeles, Calif., and delivered to the consignee, or a connecting common carrier. The packages aforesaid may pass through the custody of several carriers before reaching their destination, and it is understood as a part of the consideration, for which the said packages are received, that the exceptions from liability made by such carriers respectively shall operate in the carriage by them respectively of said packages, as though herein inserted at length; and especially that neither of said carriers, or either or any of them, or this company shall be liable for leakage of any kinds of liquids, nor for losses by bursting of casks or barrels of liquids, arising from expansion or other unavoidable causes; breakage of any kind of glass, carboys of acid, or articles packed in glass, stoves and stove furniture, castings, machinery, carriages, furniture, musical instruments of any kind, packages of eggs; or for loss or damage of hay, hemp, cotton, or for rust of iron and iron articles, or of loss or damage of any kind on any article whose bulk requires it to be carried on open cars, or for leakage of grain in bulk, or for damages to personal property of any kind, occasioned from delays, from any cause, or change of weather, or for loss or damage by fire, or for loss or damage on seas, lakes, canals or rivers. And it is further especially understood, that for all loss or damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier only

in whose custody the said packages may actually be at the time of the happening thereof—it being understood that The Missouri Pacific Railway Company, in receiving the said packages to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road. All goods carried by this company are charged at actual gross weight, excepting such articles as are provided for in our general tariff. All property will be subject to necessary cooperage, and freight is to be paid on the actual gross weight as ascertained by the company's scales. Carriers will not be accountable for loss in weight of flour, grain, seeds, feathers, or other goods, arising from unavoidable causes. Cotton in bales is at the owner's risk of wet or dirt. Claims for damages must be reported by consignee, in writing, to the delivering line within thirty-six hours after the consignee has been notified of the arrival of the freight at the place of delivery. If such notice is not there given, neither this company, nor any of the connecting or intermediate carriers shall be liable. In the event of the loss of property under the provisions of this agreement, the value or cost of the same at the point of shipment shall govern the settlement. The carriers reserve the privilege of compressing all cotton signed for on this bill of lading. No liability will be assumed for wrong carriage or wrong delivery of goods that are marked with initials, numbered or imperfectly marked. Notice:—This contract is accomplished and the liability of the companies as common carriers thereunder, terminates on the arrival of the goods or property at the station or depot of delivery, and the companies will be liable as warehousemen only thereafter, and unless removed by the consignee from the station or depot of delivery within twenty-four hours of their said arrival, they may be removed and stored by the companies at owner's expense and risk. Notice:—In accepting this contract, the shipper or other agent of the owner of the property carried expressly accepts and agrees to all its stipulations and conditions.

Consigned to order Swift & Company. Notify Robert Eccles Company, at Los Angeles, Calif.

Weight and classification subject to correction.

| | List of Articles. | Weight. |
|---|---|---|
| Rates guaranteed $1.75 per 100 lbs. | A. R. T. Car No. 5641 1756 Pcs. S. P. Bellies Freight Prepaid 350.00. | 20,000 |

Re-ice in transit if necessary.
Care of D. & R. G. R. R. at Pueblo.
Care of A., T. & S. F. R. R. at Trinidad, Colo.
(Signed)               J. M. GALLAGHER, Agt. J.

To the petition herein, defendant filed the following answer:

"Now comes said defendant, and for answer to the amended petition in the above-entitled cause, by leave of court filed, admits that it received the meat mentioned in plaintiff's petition, from Swift & Company, at South Omaha, Nebraska, on November 14, 1890, and that it made a contract in writing with said Swift & Company for the transportation of said meat, which contract is evidenced by the bill of lading referred to in said petition, and filed as an exhibit in this cause, but denies that said contract imposed on it the duty of transporting said meat beyond Pueblo, Colorado, the western terminus of its line of railway, or of forwarding the same via other lines of railway to destination. Defendant avers that in pursuance of said contract it carried said meat from South Omaha, Nebraska, to Pueblo, Colorado, the western terminus of its line of railway, and there delivered the same, in good order and condition, with safety and dispatch, to the Denver & Rio Grande Railway Company, a connecting common carrier in direct course of transit. Defendant denies each and every allegation in said petition contained not hereinbefore expressly admitted."

To this answer plaintiffs replied as follows:

"Now come plaintiffs, and, for reply to the answer of the defendant filed in this cause, say that they deny that the contract referred to in the petition herein did not impose upon the defendant the duty of transporting the articles mentioned in said contract beyond Pueblo, Colorado, or of forwarding the same by way of other lines of railway to the point of destination. Plaintiffs deny that the defendant delivered the said goods, wares, and merchandise mentioned in the petition, in good order and good condition, at Pueblo, Colorado, to the Denver & Rio Grande Railway Company, and deny that it carried the same with safety and dispatch."

At the conclusion of the evidence the defendant asked the following declarations of law, which the court denied, and entered judgment in favor of plaintiffs for

$1,550, the value of the meat shipped, and the amount of freight charges paid to defendant by Swift & Company at the request of plaintiffs:

"1. The court declares the law to be that, under the pleadings and evidence in this case, plaintiffs are not entitled to recover, and the finding will be for the defendant.

"2. The court declares the law to be that if the court believe from the evidence that the meat in controversy was safely carried by defendant and delivered to the Denver & Rio Grande Railway Company at Pueblo, Colorado, in good condition, within a reasonable time after its delivery to defendant by Swift & Company at South Omaha, Nebraska, then plaintiffs are not entitled to recover, and the finding will be for the defendant.

"3. The court declares the law to be that defendant is not liable under the contract of shipment sued on herein, and read in evidence, for any damage to the meat in controversy by delay or failure to re-ice occurring on any other railroad than the one operated by it; and if the court, sitting as a jury, finds from the evidence that defendant transported the meat in controversy from South Omaha, Nebraska, to Pueblo, Colorado, without unreasonable delay, and delivered said meat to the Denver & Rio Grande Railway Company at Pueblo, Colorado, within the time usually and reasonably required for such transportation and delivery, then the defendant is not liable in this case, notwithstanding said meat may have been delayed or not properly re-iced on connecting lines, and the finding will be for the defendant."

From the judgment thus rendered the defendant, after the usual steps taken, has brought the case by appeal to this court.

From the foregoing it is readily seen that the real controversy between plaintiffs and defendant grows out of their different construction placed upon the bill of lading or shipping contract upon which plaintiffs' suit is predicated. There is practically no conflict as to the facts of the case, plaintiffs' contention being; first, that

the bill of lading issued by defendant is a through contract of shipment from South Omaha, Nebraska, to Los Angeles, California; and, in the second place, that if the contract should be construed as not a "through contract of shipment," in the technical sense of that term, still it must at least be held as a forwarding contract by defendant from Pueblo on to Los Angeles over the designated routing as indicated in the bill of lading, and that as the evidence was undisputed that the route designated for the shipment was not carried out, but a wholly different route was chosen for forwarding the goods from Pueblo on to Los Angeles than that designated in the bill of lading, defendant by that act became an insurer for the safe carriage of the goods from the time they left Pueblo over the new route until they reached their destination, and must be held as having waived all exceptions in its favor as provided by the bill of lading, whereas defendant's sole contention at the trial was that, by the terms of the bill of lading issued, its responsibility ceased when it carried the goods safely over its road to Pueblo, its western terminus, and there delivered them in good condition and in proper time to the Denver & Rio Grande Railroad, although it was shown that the car containing the meat was afterwards delayed, and not properly iced in transit, and thereby was permitted to spoil and become valueless. It is thus readily seen that this court is wanting in authority to hear and determine the issues of this case on appeal. The amount in dispute is less than the sum of $4,500. No construction of either the State or the Federal Constitution is involved, nor was the validity of any treaty, statute, or authority exercised under the law of the United States drawn in question during the progress of the trial before the circuit court. It is true that among the assignments of error named by defendant in its motion for new trial, and again suggested in its brief filed in this court, is one to the effect that the judgment of the trial court is in conflict with an act of the Congress of the United States entitled "An act to regulate commerce," approved February 4, 1887,

and an act amendatory thereof approved March 2, 1889, commonly known as the "Interstate Commerce Act." But in what particular the judgment rendered is in conflict with that act or any of its provisions, or wherein the validity of any authority exercised under the act was drawn in question, we are not informed. No Federal question was properly raised in the case by defendant, and no right under the Interstate Commerce Act was denied to it by the trial court that would render the consideration of the appeal determinable in this court rather than in the St. Louis Court of Appeals.

The jurisdiction of the appeal being in the St. Louis Court of Appeals, and not in this court, the case, with all the papers therein, is ordered transferred to that court for consideration and disposition. All concur.